IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM FORESTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 11-0160-CG-M |
| | ) |
| BANK OF AMERICA, N.A., | ) |
| successor by merger to BAC, | ) |
| Home Loans Servicing, LP, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This matter is before the Court on the motion for summary judgment of the defendant, Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP[1] ("BAC") (Doc. 61), as to six claims brought by the plaintiff, William Forester ("Forester "). Also before the court is Forester's opposition to summary judgment (Doc. 75), and BAC's reply brief (Doc. 76). For the reasons stated below, BAC's motion is due to be **GRANTED**.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Forrester obtained a real estate mortgage loan from Countrywide Home Loans ("Countrywide") on June 17, 2005. (Doc. 34 at 2). He then defaulted on this loan sometime in "late 2007." Id. at 3.

---

[1] As noticed by the parties, Bank of America, N.A., is the successor to BAC Home Loans Servicing, L.P. As noted above, to avoid confusion from the use of too many acronyms, this defendant is referred to throughout this order as "BAC."

In December 2008, Forester applied for a loan program developed by Fannie Mae called the HomeSaver Advance loan ("HSA"). (Doc. 75 at 1). Fannie Mae developed this program to aid borrowers who were delinquent on their mortgage loans and who were still unable to pay their past due amounts, but whose circumstances were such that they could resume making normal monthly mortgage payments. (Doc. 61 at 4-5) (citing Doc. 64-1 at 3). Through the HSA program, Fannie Mae would make small, unsecured loans to borrowers as a means of bringing their delinquent loans current, resulting in the borrower having two loans to repay – their regular mortgage loan and a separate HSA loan. (Doc. 64-1 at 3). The HSA program had a number of eligibility requirements, including a requirement that the borrower's reason for delinquency had been overcome, and another requirement that the borrower would be able to make their mortgage payments going forward. Id.

Forester was conditionally approved for an HSA loan in December 2008, after his wife verbally provided BAC with financial information over the telephone indicating that their financial situation had improved. (Doc. 75 at 2) and (Doc. 61 at 1). Based upon the information that Mrs. Forester provided over the telephone, BAC mailed a Closing Certification and Instruction, in which the Foresters were required to verify the information that they previously provided orally. (Doc. 61 at 5). The Foresters signed the Closing Certification and Instruction and returned it to BAC on or about January 7, 2009. (Doc. 75 at 4-5). As they were communicating with BAC regarding the potential HSA loan in December 2008, simultaneously

Foresters failed to pay their regularly scheduled mortgage payment for that month. (Doc. 64-2 at 3).

Subsequently, on or about January 21, 2009, the Foresters received a "Notice of Intent to Accelerate" their mortgage loan from BAC, stating that the total payment required to reinstate the mortgage loan was $5,108.20. (Doc. 75 at 5). Subsequently, the Foresters received a copy of their signed HSA Closing Certification and Instruction from December 2008, with the words "VOID" stamped on the second page. Id. at 5-6. Over the course of April, May, and June 2009, after making numerous telephone calls to BAC, the Foresters ultimately received and signed three additional HSA loan packages (the "Certification and Instruction"). See Doc. 75 at 7-9. None were successfully processed. Id. The Foresters then failed to pay their mortgage for the months of April, July, August, September, October, November, and December 2009. (Doc. 64-2 at 3). Forester claims that BAC's "administrative bungling" of their HSA resulted in the institution of foreclosure proceedings against them. (Doc. 75 at 30).

On April 27, 2009, Countrywide changed its name to BAC. (Doc. 64-3 at 92). The defendant, Bank of America, N.A. ("Bank of America"), is the successor by merger to BAC. (Doc. 34 at 2, ¶6). There is no dispute that Bank of America was a mortgage servicer up until August 26, 2009. (Doc. 75 at 26) and (Doc. 76 at 2).

Forester filed this action alleging violations under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and additional violations for wrongful foreclosure, breach of the mortgage contract, negligent and wanton

3

conduct, and breach of fiduciary duty. (Doc. 34). On June 15, 2012, BAC moved for summary judgment, asserting that Forester's FDCPA claim fails because he is not a "debt collector" within the meaning of the statute. Additionally, BAC contends that Forester's state law claims fail because he was not qualified for an HSA loan and because he cannot offer substantial evidence of the essential elements of these claims. (Doc. 61 at 2).

## II.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

See id. at 251-52.  The moving party bears the burden of proving that no genuine issue of material fact exists.  O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor.  Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds might differ on the inferences arising from undisputed facts, then [a court] should deny summary judgment."  Hinesville Bank v. Pony Exp. Courier Corp., 868 F.2d 1532, 1535 (11th Cir. 1989) (citing Mercantile Bank & Trust Co. v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(a), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial."  Howard v. BP Oil Co., 32 F.3d 520, 524 (11th Cir. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial."  Vega v. Invsco Group, Ltd., 432 F. App'x. 867, 870 (11th Cir. 2011) (quoting Fed. R. Civ. P. 56(e)(2)).  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough

of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation and citation omitted).

## III.   LEGAL ANALYSIS

### A.   Wrongful Foreclosure (Count One)

Forester's wrongful foreclosure claim is based on BAC's alleged initiation of foreclosure in bad faith. Forester claims that the foreclosure proceedings were not based on a valid claim of default because BAC had already entered into the HSA agreements, "which should have retired the arrearage and resolved any default." (Doc. 75 at 28). Though foreclosure proceedings have not completed, Forester contends that "there is no support in Alabama law for the notion that there can be no wrongful foreclosure claim when there is no sale." Id. at 27. This argument is inexplicable given the fact that BAC's motion cites several cases expressly refuting it. See Doc. 61 at 13 (citing Hardy v. Jim Walter Homes, Inc., 2007 WL 174391, at *6 (S.D. Ala. Jan. 18, 2007); McClung v. Mortgage Electronic Registration Systems, Inc., 2012 WL 1642209, at *4 (N.D. Ala. May 7, 2012); In re Stovall, 2012 WL 1835538, at *7 (Bankr. N.D. Ala. May 18, 2012)).

6

Rather than address the legal precedent cited in BAC's brief, Forester cites Matthews v. Alaska Seaboard Partners Ltd., 2006 WL 2686932 (S.D. Ala. 2006), and Sturdivant v. BAC Home Loans Servicing, LP, 2011 WL 6275697 (Ala. Civ. App. 2011). Neither case is analogous to the instant one. In Matthews, the court ruled against the lender on the plaintiff's wrongful foreclosure claim, but only because it first found a genuine issue of material fact about whether the subject loan had been fully satisfied before the alleged foreclosure. See Matthews at *5-6. Here, there is no suggestion that the Foresters fully satisfied their mortgage. Moreover, in Sturdivant, the alleged foreclosure sale actually occurred, which is not the case here. See Sturdivant at *3.

Contrary to Forester's assertion, Alabama law is clear that "[a] mortgagor has a wrongful foreclosure action whenever a mortgagee uses the *power of sale* given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." Reeves Cedarhurst Development Corp. v. First American Federal Sav. and Loan Ass'n, 607 So.2d 180, 182 (Ala. 1992) (emphasis added). As Forester has merely alleged that foreclosure proceedings have been initiated, but offered no evidence that a foreclosure sale has occurred,[2] see Doc. 1 at 8,¶¶ 16, 19, and the undisputed evidence demonstrates that no sale has taken place,[3] Forester's

---

[2]   The Complaint alleges that Plaintiff initiated bankruptcy proceeds to prevent the foreclosure sale, (Doc. 1 at 8, ¶ 16), and the facts alleged in support of the claim do not plead that a sale occurred. Id.

[3]   Plaintiff testified that the property was not sold, and that he currently lives in the property. Doc. 64-3 at 34.

7

wrongful foreclosure claim (Count One) falls shy of the Reeves threshold. Therefore, the court finds that Forester has failed to set forth a plausible wrongful foreclosure claim, and BAC's motion for summary judgment is due to be **GRANTED** as to Count One.

**B.     Wantonness and Negligence (Counts Two and Three)** [4]

Counts Two and Three of the complaint allege that BAC was negligent and wanton in its management of the Foresters' mortgage loan account as well as in "the conducting of the purported foreclosure sale ..." (Doc. 1 at 9-10). However, in his opposition to summary judgment, Forester limits himself to a discussion of whether BAC "was negligent and/or wanton in its implementation of the HSA." (Doc. 75 at 29). It is undisputed that the HSA was "a separate unsecured loan agreement," and therefore distinct from the Foresters' mortgage loan. (Doc. 75 at 1).

Forester's argument for focusing on the HSA rather than the underlying mortgage loan is that BAC's "administrative bungling" of the HSA loan made it foreseeable that harm to the Foresters would result (in the form of foreclosure proceedings), and such a foreseeability of harm gave rise to a duty of care on BAC's part. Id. at 30 (citing Armstrong Bus. Services v. AmSouth Bank, 817 So.2d 665, 679 (Ala. 2001). However, Armstrong is a poor choice of legal authority for Forester

---

[4]   "Claims alleging wantonness are analyzed similarly to negligence claims, as a duty is required for both types of claims." Fassina v. CitiMortgage, Inc., 2012 WL 2577608, at *6 (N.D. Ala. Jul. 2, 2010) (citing Lilya v. Greater Gulf State Fair, Inc., 855 So.2d 1049, 1056 (Ala. 2003)).

because, while the Alabama Supreme Court acknowledged the foreseeability of harm as "the ultimate test" of the existence of a duty, it nevertheless went on to hold that a prospective lender did not owe a prospective borrower any duty that could support claims of negligence or wantonness arising out of the bank's refusal to lend money to the plaintiff.  Id. at 681.  Thus, simply arguing foreseeability in conjunction with a single citation to Armstrong does not establish that BAC owed a duty of care to Forester.

Because Counts Two and Three of the complaint derive from duties created by the mortgage agreement, which are contractual duties,  it is necessary for Forester to show that Alabama recognizes negligence and wantonness claims based upon duties created by contract.  In this regard, however, he falls short.  None of the legal precedent cited in Forester's opposition brief goes as far as he suggests.  First, Gowens v. Tys. S. ex.rel. Davis, 948 So.2d 513, 527 (Ala. 2006), is a case that could not be further removed from the determination of a lender's duties, involving as it does issues of what duty a social worker owes to abused and neglected children.  Id.  Although the case quotes a legal treatise containing the statement "[a] legal duty to exercise care … arises where the parties are bound by contract," it does so in the context of a discussion about legal duties *which arise under statute*.  Id. (citing 57 Am.Jur.2d, Negligence § 36 at 382 (1988)).  Thus Gowens, a case with no borrowers, lenders, or foreclosures at issue, and a case that is most emphatically not a contract case, lacks the precedential weight that Forester would ascribe to it.

9

The legal treatise quoted by the Gowens court was itself citing Pugh v. Butler Tel. Co., 512 So.2d 1317, 1319 (Ala. 1987), for the proposition that a legal duty to exercise care may arise out of a contract.  57 Am.Jur.2d, Negligence § 36 at 382 (1988).  Forester also cited Pugh for the same point.  However, an important limiting principle in Pugh is that "a party's negligent performance of a contract may subject that party to liability in tort *for physical harm to others*."  Pugh, 512 So. 2d at 1319. (emphasis added).  Here, there is no allegation that BAC's purported "administrative bungling" caused physical harm.

Finally, Forester cites Glenn Construction Co., LLC v. Bell Aerospace Services, Inc., 785 F.Supp.2d 1258, 1293 (M.D. Ala. 2011) and Morgan v. S. Cent. Bell Tel. Co., 466 So.2d 107, 114 (Ala. 1985) for the proposition that tort liability may arise from a contractual relationship through misfeasance (or "negligent affirmative conduct in the performance of a promise").  Glenn at 1293-94; Morgan at 114.  Presumably, Forester intends to argue that BAC's "administrative bungling" of the HSA constituted misfeasance, thereby giving rise to tort liability for negligence and wantonness.[5]  See Doc. 75 at 29-30.  Glenn and Morgan are distinguishable from this case, however, because Alabama law "does not permit Plaintiffs to assert a tort claim against Defendants for their purported breach of a contract" where only economic loss is alleged.  McClung v. Mortgage Electronic

---

[5] For example, Forester claims that BAC "failed to locate the HSA signed agreement to process the paper work;" failed to adequately fund the HSA program in 2009, when the Foresters were allegedly involved in the HSA program; and "failed to update its system to show credit for the amounts covered by the HSA loan …" (Doc. 75 at 29-30).

Registration Systems, Inc., 2012 WL 1642209 at *8 (N.D. Ala. 2012). "Under Alabama law, an agent, like BAC, could only incur tort liability while servicing a mortgage by causing personal injury or property damage as a result of a breach of the duty of reasonable care. Pure economic loss—which is what [Forester] claims—does not suffice." Blake v. Bank of America, N.A., 2012 WL 607976 (M.D. Ala. Feb. 27, 2012) (citing Restatement (Second) of Agency § 357 (1958) ("An agent who intentionally or negligently fails to perform duties to his principal is not thereby liable to a person whose economic interests are thereby harmed.")).

Furthermore, as discussed in more detail below, because the court finds that Forester has not established the existence of a genuine dispute of material fact as to his breach of contract claim, there is no contractual breach from which tort liability would spring. Accordingly, BAC's motion for summary judgment with regard to Counts Two and Three is due to be **GRANTED**.

C.   **Breach of Contract (Count Four)**

Count Four of the complaint alleges that BAC's "acts and omissions . . . in connection with management of Plaintiff's account and the conducting of the purported foreclosure sale constitute a breach of the parties' agreement." (Doc. 34 at 7). First, as a preliminary matter, and as described more fully above, because no factual allegations support that a foreclosure sale took place, BAC could not have breached the mortgage agreement based on any actions connected to such a purported foreclosure sale. See In re Small, 2012 WL 2132386, at *4 (Bkrtcy. S.D. Ala. Jun. 12, 2012).

Setting aside the foreclosure issue, then, the court turns to Forester's claim that BAC breached the mortgage agreement. See Doc. 75, pp. 17-23. This claim is focused upon what Forester describes as a chain-reaction of events beginning with the HSA loan application that the Foresters completed in December 2008. Id. Forester alleges that, after his wife returned the HSA loan application in December 2008, BAC was required to but failed to contact Fannie Mae in order to fund the original mortgage loan with HSA proceeds. (Doc. 75 at 17). Had BAC done so, Forester contends, their mortgage account would not have been past due in the weeks before they received the notice of intent to accelerate. BAC, on the other hand, claims that, because the Foresters admitted to defaulting on their payment obligations (see Doc. 75 at 1 and 4, ¶5), they have no basis for asserting a claim for breach of contract. (Doc. 76 at 6-8).

There are several problems with Forester's argument. First, Forester has dedicated a large portion of his opposition brief to arguing that BAC breached the HSA agreement. (Doc. 75 at 13) ("… it is [BAC], not the Foresters, who breached the HSA Agreement that led to the foreclosure of the Foresters' home.") However, Count Four of the complaint alleges breach of the *mortgage agreement*, and says nothing about breach of any other agreement. (Doc. 34 at 7, ¶ 34). In fact, nowhere in his complaint or opposition brief does Forester identify what part or portion of the mortgage agreement BAC allegedly breached. See Docs. 34 and 75.

On the other hand, BAC has presented evidence that the Foresters themselves breached the mortgage agreement by not making monthly mortgage

12

payments in December 2008 and April, July, August, September, and October 2009. (Doc. 64-2 at 3). Alabama law requires a party suing for breach of contract to show either their fidelity to the terms of the contract during performance or that they have a legitimate excuse for their nonperformance. See, e.g., Walker v. Harris, 235 Ala. 384, 386 (1938). A party's failure to make this showing means the party who commits a material breach cannot then use the contract to hold the other party liable for a later breach. See, e.g., Gray v. Reynolds, 553 So.2d 79, 82 (Ala. 1989) (citing Smith v. Clark, 341 So.2d 720 (Ala. 1977)); Thomas v. Smoot, 2 Ala. App. 407, 409 (Court of Appeals of Alabama 1911).

Secondly, although Forester asserts that he and his wife "made their regular monthly mortgage payment after sending in the HSA documents," (Doc. 75 at 5), they did not, in fact, make a monthly mortgage payment for December 2008 – the very month that they signed and returned the HSA Agreement.[6] (Doc. 64-2 at 3). This demonstrated that the Foresters were not eligible for the HSA loan, the requirements of which included that the borrower's reasons for delinquency had been overcome. (Doc. 64-1 at 3-4). Forester's assertion that "[n]othing in the agreement signed by the borrowers or in the Fannie Mae guidelines suggests that if the borrowers ceased payments under their original mortgage that it would trigger the cancellation of the HSA program," is not well taken, because by Forester's own account, the HSA program was "designed to bring – to solve the delinquency of a

---

[6] Forester omits, or at the very least, glosses over this fact in his opposition brief. (Doc. 75 at 5, ¶ 7).

borrower who was suffering or experiencing temporary hardship and was in a position to make their monthly mortgage payment …" (Doc. 75 at 12) (quoting Doc. 75-2 at 2) (emphasis added).  Even before they submitted the HSA agreement to BAC, the Foresters had demonstrated that they were *not* "in a position to make their monthly mortgage payment." See id.   Therefore, based upon the missed December 2008 payment alone, BAC was entitled to accelerate and foreclose the mortgage.  See Doc. 64-2 at 6-7, ¶ 6.  This reasoning also applies to the HSA agreements signed and returned in April 2009

Accordingly, summary judgment as to Count Four is **GRANTED**.

**D.     FDCPA Violation (Count Five)**

BAC argues that it is entitled to summary judgment on the FDCPA claim because it is not a "debt collector" within the meaning of the FDCPA.  (Doc. 61 at 8). BAC points to 15 U.S.C. § 1692(a)(6)(F), which excludes from the definition of debt collector "any person collecting or attempting to collect any debt . . . to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person."

The court finds no genuine material dispute that BAC is not a "debt collector" within the meaning of the FDCPA.   Forester readily admits that BAC has serviced the Loan since its inception in 2005.  (Doc. 75 at 26).  "Under the FDCPA, consumer's creditors, a mortgage servicing company, or an assignee of a debt are not considered 'debt collectors,' as long as the debt was not in default at the time it was assigned."  Reese v. JPMorgan Chase & Co., 686 F.Supp.2d 1291, 1308 (S.D.

Fla. 2009) (dismissing the FDCPA claim with prejudice where the complaint indicated that the defendants were creditors and mortgage servicers and, thus, were specifically excluded under the FDCPA); see also Locke v. Wells Fargo Home Mortg., 2010 WL 4941456, at *2 (S.D. Fla. Nov. 30, 2010) (dismissing FDCPA claim with prejudice and holding that "[s]ince Wells Fargo was the mortgage company servicing the Plaintiff's mortgage, it cannot be liable as a 'debt collector' under section 1692").

Forester also concedes that Countrywide "changed into BAC." Doc. 75 at 14 n.2; see also Doc. 63 at 2, ¶¶ 3, 4 ("Countrywide . . . is now known as BAC [and] changed its name to BAC."). The Certificate of Amendment to the Certificate of Limited Partnership shows that on April 21, 2009, Countrywide's certificate of limited partnership was amended to read: "The name of the limited partnership is BAC Home Loans Servicing, LP." (Doc. 64-3 at 92.) Thus, Countrywide and BAC are, in fact, one and the same entity.

Having conceded this point in his opposition brief, Forester nevertheless argues that, for purposes of 15 U.S.C. § 1692(a)(6)(F)(iii), BAC obtained the debt through an assignment dated August 26, 2009, at a time when it regarded the loan as in default. (Doc. 75 at 26). This argument is unavailing in light of Forester's admission that BAC and Countrywide are the same. See Mortensen v. Mortg. Elec. Registration Sys., 2010 WL 5376332, at *2 n. 9 (S.D. Ala. Dec. 23, 2010) (finding that the same parties – Countrywide and BAC – are "one and the same entity"); see also Brown v. Morris, 243 Fed. App'x 31, 34 (5th Cir. 2007) ("ABN AMRO, a

mortgage company, was not specifically assigned Brown's mortgage for debt-collection purposes. Rather, ABN AMRO acquired it through its merger with Brown's previous mortgage company. Accordingly, ABN AMRO did not 'obtain' her mortgage while it was in default" and ABN AMRO was therefore "not an FDCPA debt collector"); Meyer v. Citimortgage, Inc., 2012 WL 511995, at *7 (E.D. Mich. Feb. 16, 2012) ("CMI is not considered a debt collector under the FDCPA unless the loan in question was in default at the time CMI acquired its interest in the loan. As explained above, CMI is the successor by merger to ABN AMRO, the originating lender and mortgagee, and therefore it is impossible for the loan to have been in default at the time CMI received its interest.") (internal citation omitted); Dues v. Capital One, NA, 2011 WL 3799762, at *4 (E.D. Mich. 2011 Aug. 8, 2011) (debt not obtained for purposes of FDCPA through merger).

Therefore, the court finds that summary judgment is due to be **GRANTED** with regard to Count Five.

**E.  Breach of Fiduciary Duty (Count Six)**

Count Six of the complaint alleges a breach of the "implied fiduciary duty of fairness and good faith as to all aspects of the mortgage agreement, including the exercise of any power of sale clause contained in the mortgage." (Doc. 34 at 8-9, ¶ 38). BAC allegedly breached that duty through "acts and omissions . . . in connection with the management of the Foresters' account and the conducting of the purported foreclosure sale contrary to the terms of the mortgage, as modified." Id. at 8. Forester is correct that as a general rule every contract contains an implied

covenant of good faith and fair dealing. Shoney's LLC v. MAC East, LLC, 27 So.3d 1216, 1220 n. 5 (Ala. 2009) (citations omitted). However, Alabama law does not recognize a general fiduciary duty owed by a mortgagee, like BAC, to a mortgagor, like Forester, by virtue of the mortgagee extending a mortgage loan. Vision Bank v. Lanza, 2011 WL 5190847, at *4 (S.D. Ala. 2011) (citing Brabham v. American Nat. Bank of Union Springs, 689 So.2d 82, 88 (Ala. Civ. App. 1996)); see also In re Small, 2012 WL 2132386, at *6 (Bkrtcy. S.D. Ala. June 12, 2012). Because no duty existed for BAC to breach, summary judgment on Count Six is due to be **GRANTED**.

## CONCLUSION

Upon a thorough analysis of all matters presented, the Court concludes that there is no genuine dispute as to any material fact, and that BAC is entitled to judgment as a matter of law. Accordingly, BAC's motion for summary judgment (Doc. 60) is therefore **GRANTED** on all counts.

**DONE** and **ORDERED** this 7th day of August 2012.

Callie V. S. Granade
UNITED STATES DISTRICT JUDGE